## Curtis and others vs. Masten and others.

An answer setting up a defence of usury, under the laws of this state, must state the particular facts and circumstances of the supposed usurious agreement, to the end that the court may see that the agreement was a violation of the statute; and it is not sufficient to state that the bonds alleged to be usurious were made to be sold at a usurious premium, and were so sold, contrary to the laws of this state.

Where the defendant, in his answer, wishes to set up the defence of usury, upon the ground that the securities alleged to be usurious were first sold in another state or

country, in violation of the usury laws in force there, he must state in his answer what those laws were at the time of the supposed usurious sale, and the particular facts and circumstances of the case which rendered the transaction usurious under those laws; so that the court may see that, if the answer is true, the securities are void for usury in the hands of the purchasers and holders thereof.

If an exception for impertinence embraces matters of the answer which are responsive to allegations in the complainant's bill, as well as matters which are impertinent, the whole exception must be disallowed.

THE facts in this case are sufficiently stated in the opinion of the chancellor, to show the grounds upon which the defence of usury, attempted to be raised by the answer, was overruled as impertinent.

*W. C. Noyes,* for complainant.

*W. L. F. Warren,* for defendant.

THE CHANCELLOR.    This case comes before me upon exceptions to the report of Master Ruggles, allowing eight exceptions to the answer of the defendant Masten, for impertinence.    The object of the bill is to foreclose a mortgage given by Masten to Joseph D. Beers, as president of the North American Trust and Banking Company, and which mortgage was afterwards assigned to the complainants, as trustees, in trust to secure the payment of certain bonds of that association.    One defence attempted to be set up in the answer was, that the bonds, to secure the payment of which the assignment in trust was made, were void for usury.    The *first, second, fourth, fifth, sixth* and *seventh* exceptions relate to the sale of the bond in England at a discount; and which sale the answer alleges to be usurious.    These exceptions are founded upon the fact that there is nothing in the answer showing that there are any statutes in England making the bonds void in the hands of the holders thereof, even if the matters stated in the answer and excepted to as impertinent are true.    The only allusion to any usury laws in England, is a prayer in the answer, that this court "will take notice of the statutes of Great Britain against usury."    But nothing is stated in the answer as to what statutes are intended to be referred to,

or when they were passed, or what are their provisions which are supposed to have been violated. A replication to such an answer would not put in issue the existence of any law of a foreign country, so as to enable the parties to take proof as to the provisions of the law supposed to be violated. The proper course for the defendant, if he wished to set up the defence that these bonds were void, upon the ground that they had been first negotiated in England, to raise money at a discount beyond the amount allowed by the laws of England, was first to state what the laws of England were, at the time of the transaction, and then to set out the facts which rendered the securities void according to those laws: So that the court, upon the answer itself, could see that, if the allegations therein were true, the trusts upon which the assignment was made were illegal, or that they had failed, because the bonds, which the assignment was given to secure, were void in the hands of the holders thereof. Upon a replication to such an answer, containing the proper allegations on the subject, either party would have an opportunity to prove or disprove the fact of the existence of the supposed usury laws, in the usual mode of proving foreign laws. The matters embraced in those six exceptions are therefore impertinent. And the corresponding exceptions to the master's report must be overruled.

The eighth exception is to a part of the answer in which the defendant avers that the bonds were made and executed in this state to be sold at an usurious premium, and were sold at such usurious premium, contrary to the laws of this state; by which the bonds and deed of trust were rendered void. But no fact is stated in the answer showing that any usurious contract had been made here which could render the bonds void by our laws. The objection to this general charge of usury is, that although the court is bound to take notice of our laws, the defendant who attempts to set up the defence of usury must state the particular facts and circumstances of the supposed usurious agreement; so that the court can see that it was such a violation of the statute, as rendered the contract void for usury. (*Comyn on Usury*, 203. *New-Orleans Gas Light Company* v. *Dudley*, 9 *Paige's Rep.*

458.) This part of the answer is therefore impertinent, and the eighth exception was properly allowed by the master; and the eighth exception to his report must be disallowed.

The third exception embraces a part of the answer which appears to have been directly responsive to an allegation in the bill, that the mortgage was in the first place assigned to Beers, Graham and Tylee, as trustees, and afterwards re-assigned by them to Beers, as president of the company. And if the other matters embraced in that exception were impertinent, upon which question I express no opinion, the exception is too broad, and should have been overruled on that account. (1 *Russ. & Myl.* 30. 4 *Paige,* 174.) The third exception to the master's report must therefore be allowed, and the third exception to the answer is disallowed.

The complainants are entitled to their costs of the hearing of these exceptions to the report, to be taxed, not exceeding ten dollars; and to their costs of the seven exceptions to the answer which are finally allowed, including the costs of expunging the impertinent matter. And the order must direct the proper officer to expunge the impertinent matter; and that the defendant Masten pay the costs within twenty days after service of the taxed bill.